McBRIDE, Judge.
Plaintiff, who is a licensed real estate broker in New Orleans, brought this suit against the defendants, Mr. and Mrs. Andrew Cuccia, to recover $450, which he claims as a commission of 5 percent of the purchase price which Mrs. Cuccia had offered for certain real estate owned by Russell F. Kintzley. The demand is based upon a written offer dated January 21, 1953, wherein Mrs. Cuccia offered to purchase through plaintiff the property 3610-12 No. Miro Street for $9,000, “Terms $2,000.00 cash balance private or homestead loan, to be arranged by purchaser or agent, any N?w Orleans Homestead, or private loan same plan; yearly interest 6% or less, maturity not exceeding 15 years.” The offer was accepted by the owner, Kintzley, on January 22, 1953, and on the next day Mrs. Cuccia was notified in writing of such acceptance.
The offer also contained the following provisions:
“If this is accepted, I obligate myself to deposit with Emile B. Doll, Agent, 10% of the purchase price in 5 days. Should I fail to comply with above offer, if accepted, I obligate myself to pay your commission of 5 per cent. * * * ”
The petition alleges that in making and signing the offer to purchase, Mrs. Cuccia was acting for her husband as well as herself, and that the offer was made for the benefit of the matrimonial community existing between them. It is further alleged that the defendants withdrew from and refused to go on and comply with their undertaking to purchase the property and accordingly plaintiff is entitled to his real estate broker’s commission.
The trial below resulted in a judgment in plaintiff’s favor against Mrs. Cuccia; the suit against the husband was dismissed. However, on rehearing of the case, the suit as against both defendants was dismissed and plaintiff has appealed.
Mrs. Cuccia concedes that she never did comply with the agreement to make the deposit of 10 percent of the purchase price with the agent, although plaintiff addressed letters to her on January 23, 1953, *424 Feburary 5, 1953, and March 5, 1953, insisting that the required deposit be made with plaintiff. Mrs. Cuccia, probably on receipt of the last of the said letters, informed plaintiff that she intended to or had made application to the Third District Homestead in New Orleans for a loan and that from the proceeds of the loan she would be able to make the deposit in a few days. About March 5, 1953, a representative of the homestead association informed plaintiff that a loan to Mr. Cuccia for $12,500 had been approved on 3610-12 No. Miro Street and 2541-43 No. Miro Street, and that Mrs. Cuccia would pay cash for the property which she had agreed to purchase through plaintiff from Kintzley. Thereupon plaintiff sent to the homestead “a copy of the title” to 3610-12 No. Miro Street.
The record shows that the loan had been applied for by Andrew Cuccia who was- the owner of 2541-43 No. Miro Street, and the explanation given the homestead as to why he desired a loan of $12,500 on the two parcels of property was that he needed the money to discharge an existing indebtedness on 2541-43 No. Miro Street and to secure a sufficient amount with which to purchase 3610-12 No. Miro Street.
It seems that after plaintiff was informed that the Cuccia loan had been approved, no further effort was made by plaintiff to have Mrs. Cuccia make the 10 percent deposit, and we believe that both the agent and the owner of the property abandoned that part of the agreement which required such deposit, they being perfectly content to permit Mrs; Cuccia to proceed with the homestead transaction and to pay all cash for the property at the time the sale was to be consummated.
In due course, the approval of the title by the attorney for the homestead was forwarded to the notary public designated to consummate the transaction and April 14, 1953, was set as the date for the passage of the acts. However, a peculiar circumstance developed. On the day preceding that on which the transaction was to be passed the notary public learned that the transaction could not be consummated for the reason that Cuccia had been previously married and the property 2541-43 No. Miro Street was an asset of the community which had existed between him and his first wife who died in the year 1936. The notary public was told by Mrs. Cuccia that Cuccia’s children, issue of his first marriage, were claiming an interest in the property and that they would refuse to sign the act of mortgage. When this information was relayed to the attorney for the homestead, the loan commitment was recalled.
No further attempt was made either by Mrs. Cuccia or by plaintiff to secure another loan on 3610-12 No. Miro Street, and the record shows that Kintzley sold the property to another purchaser shortly afterward.
Under these circumstances, plaintiff is not entitled to the commission which he claims. It seems that both Mr. and Mrs. Cuccia acted in good faith in the transaction and made a bona fide attempt at securing a loan so that Mrs. Cuccia could comply with her agreement to purchase. It seems that the plaintiff was satisfied with the application for the loan as made to the homestead and we do not think that Mr. and Mrs. Cuccia should be penalized because of a defect in the title to the property which her husband tendered to the homestead as security for the loan.
In Decker v. Renaudin, 10 La.App. 725, 122 So. 600, 601, this court said:
“Plaintiff’s offer contained two alternative conditions. In effect he said: ‘I will buy your property if the Conservative Homestead will lend me the money, or if your agent Smith can arrange for some other loan for me.’ The homestead refused to lend the money, and Smith did not arrange for any other loan. Under [LSA] C.C. art. 2021, these conditions appear to us to have been suspensive, as plaintiff’s obligation to purchase did not come in *425 to existence until the happening of one of the events on which the offer was conditioned. As neither of the events has happened, plaintiff’s obligation has not come into existence, and he is at liberty to withdraw and to require that his deposit be returned to him.”
See also Eastbank Land Co., Inc. v. Hoffstetter, 170 La. 594, 128 So. 527; Mathews v. 8 Mile Post Plumbing Supplies, Inc., La.App., 70 So.2d 218; Savich v. Ruiz, La.App., 32 So.2d 415.
True, the loan was also to be secured by another piece of property and the purpose of the loan was not only to pay the purchase price of 3610-12 No. Miro Street but to pay the existing indebtedness on the other property as well, but plaintiff knew of this all along and registered no objection as to the manner in which the loan had been applied for. He seemed entirely satisfied to wait with every expectation that the outcome of the transaction would be satisfactory. Under the offer as made by Mrs. Cuccia, plaintiff had the right to secure a loan on her behalf and plaintiff had every opportunity to do so even with the same homestead, as that association evidently kept him apprised of the progress of the loan that Cuccia had applied for.
It might also be mentioned that the offer and acceptance stipulated no time limit for the passage of the formal act of sale and under this circumstance it seems to us that when the loan to Cuccia was recalled it was not then too late for plaintiff to attempt to obtain another loan for Mrs. Cuccia or notify her that she would be expected to make further efforts in that regard. The facts are sufficient to show that when the homestead association declined the loan both plaintiff and Mrs. Cuccia considered the whole matter as abandoned and that the offer to purchase was ineffectual.
In view of the conclusions we have reached, it is unnecessary to discuss the other defenses raised by defendants. One of these is very interesting and fhat is whether the offer as made by Mrs. Cuccia bound the community existing between herself and her husband.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., takes no part.